IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM WILSON, | : | No. 3:25cv315 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| LT. RAMER, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff William Wilson ("Wilson") commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his rights under the First, Eighth, and Fourteenth Amendments, when he was housed at the State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville"). (Doc. 1). Named as defendants are Lieutenant Ramer, Lieutenant Cress, Lieutenant Mohl, Sergeant Parsal, Sergeant Walter, Sergeant Lucas, Correctional Officer Frantz, Correctional Officer Thomas, Correctional Officer Forte, Correctional Officer Shellhamer, and Correctional Officer Figueiredo.

Presently before the court is defendants' motion (Doc. 13) to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Wilson represents that he does not oppose defendants' motion. (Doc. 26) (stating that "[Wilson] did not oppose Defendant[s'] said motion and hopes to

avoid filing an Amended Complaint"). For the reasons that follow, the court will grant defendants' motion and grant Wilson leave to amend his claims against defendants Cress and Mohl.

I.  **Factual Background**

    A.    Facts Related to Defendant Figueiredo

Wilson alleges that, on an unspecified date prior to October 1, 2023, defendant Figueiredo allegedly saw him exiting SCI-Frackville's security office for book pickup, "perhaps being the reason why he attacked [Wilson] the way he did." (Doc. 1 at 8 ¶ 23). Wilson explains the "attack" by defendant Figueiredo as follows.

On October 1, 2023, at approximately 8:00 a.m., Wilson went to the education building at SCI-Frackville to attend the law library. (Doc. 1 at 7 ¶ 15). Defendant Figueiredo was at the metal detector at the entrance to the building and monitored each inmate walking through the machine. (Id. ¶ 16). Wilson alleges that, when the inmate in front of him went through the metal detector, defendant Figueiredo purposely hit the side of the metal detector and set it off. (Id. ¶ 17). The inmate in front of Wilson looked directly at Figueiredo and asked him, "did you just do that[?]" (Id. ¶ 18). Figueiredo denied hitting the metal detector, "trying to make it seem as if [Wilson] was the one who did it, causing

tension between the two inmates." (Id. ¶ 19). Wilson immediately said, "he's lying, he did do it, I saw him do it[.]" (Id. ¶ 20). Figueiredo then got angry and called Wilson "a rat and a snitch," in the presence of at least five other inmates and another non-defendant Correctional Officer. (Id. at 7-8 ¶¶ 21, 25). As stated, Wilson speculates that Figueiredo attacked him because he previously saw Wilson leave the security office. (Id. at 8 ¶ 23).

Wilson then proceeded to the law library. (Id. ¶ 25). Once in the law library, Wilson alleges that other inmates "laughed and spoke about how Defendant Figueiredo called [Wilson] a 'rat'[.]" (Id. ¶ 26).

Wilson alleges that after Figueiredo's comments, Wilson has been called "'rats and snitches' to his face by inmate[ ]s and different staff members (including Defendants) as well as behind [Wilson's] back." (Id. ¶ 27).

Wilson asserts that inmates at SCI-Frackville now believe that Wilson provided information about inmates to the security office. (Id. ¶ 28). Wilson alleges that he has been assaulted by fellow inmates due to these allegations. (Id. ¶ 29). He further alleges that he is no longer welcome at religious gatherings and was ostracized as a "rat and snitch" by other inmates. (Id. at 8-9 ¶¶ 30-31).

B.  Facts Regarding Inmate Grievances and Misconducts in October 2023

Wilson alleges that he fully exhausted the available administrative remedies regarding his current claims by filing multiple grievances, some of which were exhausted, and some which he was prevented from exhausting. (Doc. 1 at 2 ¶ II).  Wilson acknowledges that there is a prison grievance procedure available at the institution where he was housed at the time he filed his complaint, the State Correctional Institution at Chester.  (Doc. 1 at 2 ¶ II; Doc. 1 at 5 ¶ 3).

On October 2, 2023, Wilson filed grievance number 1055016 related to defendant Figueiredo's alleged comments.  (Doc. 1 at 9 ¶ 32).  Wilson alleges that after he submitted grievance number 1055016, the defendants and another non-defendant officer warned Wilson that if he did not sign off on his grievance, he would suffer retaliation.  (Id. ¶ 33).

Wilson then alleges that, on October 7, 2023, defendant Lucas issued a false misconduct against him (number D954436) in hopes that Wilson would be sent to the Restricted Housing Unit ("RHU").  (Id. ¶ 34).  Misconduct number D954436 charged Wilson with being "in an unauthorized area" and falsely mentioned that Correctional Officer Trutt (a non-defendant) was involved in the misconduct.  (Id. ¶¶ 35-36).  At the time, the charge of presence "in an

4

unauthorized area" was eligible for 90 days in the RHU. (Id. ¶ 35). After receiving a copy of misconduct number D954436 on October 7, 2023, Wilson showed the misconduct to Correctional Officer Trutt. (Id. ¶ 37). Correctional Officer Trutt reviewed the misconduct and allegedly told defendant Lucas that Wilson should not have received the misconduct because Trutt gave Wilson permission to be out of his cell at that time. (Id. ¶ 38). Wilson alleges that defendant Lucas then "scold[ed]" Correctional Officer Trutt "for being honest" and informed Trutt that Wilson recently submitted a grievance against another officer, and stated "'for get (sic) him, that's what he gets' (referring to fabricated misconduct #D954436)." (Id. ¶ 39). After overhearing this conversation, Wilson requested to speak with a supervisor. (Id. at 9-10 ¶ 40). In response, Lieutenant Peters informed Wilson that he spoke to defendant Lucas and Correctional Officer Trutt, and he stated that the misconduct should not have been issued to Wilson. (Id. at 10 ¶ 42). On October 12, 2023, following a hearing, misconduct number D954436 was dismissed without prejudice due to Lieutenant Peters' testimony. (Id. ¶ 45).

Shortly after misconduct number D954436 was dismissed, Lieutenant Schuetrum (a non-defendant) interviewed Wilson about grievance number 1055016 and informed Wilson that Figueiredo's comments about Wilson were

addressed and handled. (Id. ¶¶ 46-47). Lieutenant Schuetrum also informed Wilson that she was aware of the retaliation Wilson was experiencing due to filing this grievance and that Wilson "should just sign off on said grievance to prevent any further retaliation." (Id. at 10-11 ¶ 48). Wilson declined to sign off on the grievance. (Id. ¶¶ 48, 50). Wilson alleges that "within days of that interview[,]" defendant Lucas resubmitted the same "falsified misconduct" that he issued against Wilson on October 7, 2023. (Id. at 11 ¶¶ 50-51). The resubmitted misconduct was documented as number D497244 and charged Wilson with being in an "unauthorized area[,]" as well as a new, unspecified charge. (Id. ¶ 51). At the hearing for this second misconduct (number D497244), Wilson "again beat" the charge of being in an unauthorized area but was given a warning for the new charge with no sanction. (Id. at 11-12 ¶ 56).

Wilson contends that he complained to a non-defendant employee at SCI-Frackville about the retaliation he experienced. (Id. at 11 ¶¶ 52-53).

Wilson alleges that Department of Corrections' employees, including the defendants, informed him that defendant Lucas "was looking to cause [Wilson] any type of discomfort due to [Wilson] filing grievances against other Officers." (Id. ¶ 53).

C.  Facts Related to Legal Materials

On November 12, 2023, while compiling information and preparing to file a legal complaint in the law library, Wilson was approached by defendants Ramer and Frantz. (Id. at 12 ¶ 58). Wilson alleges that he was called into the hallway where defendant Ramer said "oh, these are your grievances hah, I'm allowed to look at these," then proceeded to take Wilson's legal papers and rummage through his files and threatened to send Wilson to the RHU. (Id. ¶¶ 59-60). Wilson alleges that defendant Ramer threw some of his legal materials in the trash can. (Id. ¶ 61). Defendants Ramer and Frantz continued to go through Wilson's legal materials and allegedly told Wilson to go back to his block and prepare to go to the RHU. (Id. ¶ 64). Wilson alleges that he left the law library and saw defendant Frantz walk towards the security office with his legal materials. (Id. at 13 ¶ 65).

After arriving back on his unit, Wilson spoke to an unknown third-party captain and informed him that defendants Ramer and Frantz took his legal materials. (Id. ¶¶ 66-67). Later that day, some of Wilson's legal materials were returned to him. (Id. ¶¶ 67-68). Wilson asserts that certain documents supporting his retaliation claim were missing. (Id. ¶ 69).

D.  Facts Related to Inmate Grievances and Misconducts in November 2023

On November 13, 2023, Wilson filed grievance number 1060826 asserting that defendants Ramer and Frantz threatened him and confiscated his legal materials without cause. (Id. ¶ 70). On November 15, 2023, Wilson was interviewed by Captain Moser (a non-defendant) regarding grievance number 1060826. (Id. ¶ 71). Moser asked Wilson to sign off on the grievance because Moser was unable to substantiate the claims due to lack of audio from the video surveillance of the incident. (Id. ¶¶ 71-72). Wilson declined to sign off on the grievance. (Id. at 14 ¶ 76). He alleges that multiple officers continued to harass him. (Id.).

On January 5, 2024, Wilson alleges that five officers, including two defendants, escorted him from the gym to the RHU because of another fabricated misconduct (number D954462) authored by defendant Forte. (Id. ¶ 77). Misconduct number D954462 set forth three unspecified charges against Wilson, and each was eligible for 90 days in solitary confinement. (Id. at 14-15 ¶¶ 77-78, 84). Wilson was placed in the RHU in a cell with a camera cell due to his deteriorating mental health. (Id. at 14 ¶ 79). On January 6, 2024, defendant Forte informed Wilson that he only issued misconduct number D954462 because defendant Lucas asked him to get Wilson sent to the RHU for filing grievances.

8

(Id. ¶ 80). Defendant Forte also informed Wilson that he would be a witness at the misconduct hearing to get leniency for Wilson. (Id. ¶ 81). On January 9, 2024, a hearing was held on misconduct number D954462. (Id. at 14-15 ¶ 82). Defendant Forte was not at the hearing. (Id.). The hearing examiner found in Wilson's favor and released him to his original block. (Id. at 15 ¶ 83).

Prior to Wilson leaving the RHU, on January 7 or 8, 2024, defendant Walter inventoried Wilson's personal property, which was gathered and packed from Wilson's original cell in general population on January 5, 2024 by defendants Thomas and Shellhamer. (Id. ¶ 85). Wilson noticed that some of his property was either destroyed or missing, including his legal materials. (Id. ¶ 86). Defendant Walter allegedly blamed Thomas and Shellhamer and listed on the property inventory sheet that Wilson "alleged" that he was missing legal materials. (Id. ¶¶ 87-88). Defendant Walter also allegedly informed Wilson that he needed to send some items home or destroy them. (Id. ¶ 89). Wilson alleges that defendant Walter forced him to sign a cash slip to avoid the destruction of his property. (Id. at 16 ¶ 92).

On January 9, 2024, before his release from the RHU, Wilson again noticed that more of his personal property and legal materials were missing. (Id. ¶ 93). Wilson alleges that defendants Shellhamer, Thomas, and Walter

9

destroyed or confiscated his property in retaliation for Wilson's grievances. (Id. ¶ 94).

On January 22, 2024, Wilson complained to Unit Manager Cintron (a non-defendant) about his missing property. (Id. ¶ 95). Unit Manager Citron allegedly advised Wilson to file a grievance, even though Wilson already filed grievance numbers 1069820 and 1699824 on January 11, 2024 against defendants Shellhamer, Thomas, and Walter. (Id. ¶ 96). In reviewing Wilson's claim regarding missing property, Cintron could only prove that Wilson's razor was missing. (Id. ¶ 97).

On January 17, 2024, defendant Parsal went to Wilson's cell and yelled "you['re] a rat, rat Wilson[.]" (Id. ¶ 98). On that same evening, Wilson filed a grievance (number 1070262) related to this incident. (Id. at 17 ¶¶ 102-103). The following day, Wilson reported the incident to the security office. (Id. ¶¶ 104-105). After Wilson reported the incident, he alleges that defendant Parsal again went to his cell door and called him a "rat[ ][.]" (Id. ¶ 106). On January 18, 2024, Wilson filed another grievance (number 1071362) against defendant Parsal. (Id. ¶ 109).

E.   Allegations against Defendants Cress and Mohl

During an encounter with defendant Cress, Wilson expressed that he did not want to sign off on either grievance against defendant Parsal. (Id. at 18 ¶ 110). He alleges that defendant Cress continued to press him and informed Wilson that things could be worse if he did not sign off on those two grievances. (Id. ¶ 111). On January 26, 2024, Wilson signed off on both grievances against defendant Parsal to avoid the threat of further retaliation. (Id. ¶ 112).

On February 12, 2024, defendant Mohl approached Wilson about signing off on another grievance (number 1069820) against defendant Walter. (Id. ¶¶ 113-114). Due to the pressure and threat of continued harassment and retaliation by defendant Mohl, Wilson signed off on that grievance (number 1069820). (Id. ¶ 114).

II.  **Legal Standard**

A.   Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light

11

most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the...claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the

court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

B. 42 U.S.C. Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause

of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. Discussion

In the instant motion, defendants move to dismiss the claims against Cress and Mohl. (Docs. 13, 21). They argue that the complaint fails to comply with Federal Rule of Civil Procedure 8. (Doc. 21). The court's review of the complaint reveals that Wilson fails to provide defendants Cress and Mohl with adequate notice of the nature of the claims against them in violation of Federal Rule of Civil Procedure 8(a).

Federal Rule of Civil Procedure 8 establishes the general rules of pleading. See FED. R. CIV P. 8. Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV P. 8(a)(2). Rule 8(d)(1) speaks to factual allegations, requiring that "[e]ach allegation...be simple, concise, and direct." FED. R. CIV P. 8(d)(1). These rules task the plaintiff to provide "the defendant notice of what the...claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Twombly, 550

14

U.S. at 555). This standard requires more than legal labels and conclusory assertions: a complaint must include enough facts to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Wilson's complaint fails to meet these basic pleading requirements with respect to his claims against defendant Cress and Mohl. Wilson's entire allegations against Cress and Mohl are as follows:

> (110) During the encounter with Defendant Cress. [Wilson] expressed that he did not want to sign off on either grievance against Defendant Parsal.
>
> (111) But Defendant Cress continued to press [Wilson], and informed [Wilson] that things could be wors[e], if he did not sign off on those two grievances against Defendant Parsal.
>
> (112) So [Wilson] eventually signed off on both grievances (#1070262 and #1071362) against Defendant Parsal on 1-26-2024, due to the threat of further retaliation from Defendant Cress, at the hands of others.
>
> (113) On 2-12-2024, [Wilson] was approached by Defendant [Lt.] Mohl. Once again about signing off on another grievance (#1069820).
>
> (114) And due to the pressure and the threat of continued harassment/retaliation by Defendant [Lt.] Mohl, [Wilson] signed off on said grievance (#1069820) on 2-12-2024, which was against Defendant Walter.

(Doc. 1 at 18 ¶¶ 110-114) (sic).

15

The allegations against defendants Cress and Mohl are too vague and ambiguous for the defendants to be expected to respond to them because Wilson never asserts <u>how</u> the conduct of Cress and Mohl impacted him. Accordingly, the allegations against these two defendants fail to satisfy Federal Rule of Civil Procedure 8, which requires Wilson to make "a short and plain statement" showing that the alleged actions of Cress and Mohl were unlawful and entitle him to relief. See <u>Garrett v. Wexford Health</u>, 938 F.3d 69, 92 (3d Cir. 2019) ("Conclusory allegations of liability are insufficient [to satisfy Rule 8]."). Therefore, the claims against Cress and Mohl will be dismissed without prejudice, and the court will grant Wilson leave to amend so that he may attempt to cure this defect.

## IV.  Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. See <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir. 2002) (holding that in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, a court should grant a plaintiff leave to amend a deficient complaint after a defendant moves to dismiss it). "In assessing 'futility,' the district court applies

the same standard of legal sufficiency as [it] applies under Rule 12(b)(6)." In re Burlington Coat Factory, 114 F.3d at 1434.

The court recognizes that Wilson does not oppose dismissal of the above claims and that he "hopes to avoid filing an Amended Complaint." (Doc. 26). However, in an abundance of caution, the court will grant Wilson leave to amend his claims against defendants Cress and Mohl.

## V.    Conclusion

Consistent with the foregoing, the court will grant defendants' motion (Doc. 13) to partially dismiss the complaint. The claims against defendants Cress and Mohl will be dismissed without prejudice and with leave to amend. If Wilson chooses not to file an amended complaint, the dismissal of the claims against defendants Cress and Mohl without prejudice will convert to a dismissal with prejudice.

An appropriate order shall issue.

Date: January __, 2026

JUDGE JULIA K. MUNLEY
United States District Court